**June GOFFSTEIN and Louis Lubin, (Plaintiffs) Respondents,**

v.

**Harvey F. EUGE, (Defendant) Appellant.**

**No. 32002.**

St. Louis Court of Appeals.

Missouri.

Jan. 19, 1965.

Motion to Quash and for a Rehearing or to Transfer to Supreme Court Denied Feb. 12, 1965.

Application to Transfer Denied April 12, 1965.

Harvey F. Euge, pro se.

Ronald M. Lending, St. Louis, for respondents.

RUDDY, Presiding Judge.

This suit was brought under the provisions of § 535.070 RSMo 1959, 37 V.A.M.S., for possession of premises located at 1803 Park Avenue, St. Louis, Missouri, occupied by defendant and owned jointly by the plaintiffs herein. Plaintiffs allege in their statement that they bring this suit for possession only because defendant refused to attorn to them as new owners of the premises and refused to pay them rent. Defendant has appealed from the judgment against him for possession of said premises.

This suit had its beginning in the Magistrate Court of the City of St. Louis on the

16th day of July, 1963, when plaintiffs filed their affidavit and statement for possession of said premises.

It was alleged in said statement that on or about the 10th day of December, 1962, plaintiffs purchased from Morris H. Erlich and Rosalee Erlich the premises described as 1803 Park Avenue, St. Louis, Missouri; that at the time of the purchase of said premises there was a lease agreement between the Erlichs and defendant for a term of two years commencing on October 1, 1961, and terminating on September 30, 1963, at the monthly rental of $35.00 per month, payable in advance on the 1st day of each month. It was further alleged that said defendant acquired possession of said premises by virtue of the lease agreement and was still in possession of said premises at the time of the purchase of same by the plaintiffs; that on or about the 5th day of July, 1963, plaintiffs by and through their agent Milton Goffstein exhibited to defendant the warranty deed by which they acquired from the said Erlichs the title and fee interest to the said premises and real estate and immediately notified defendant of their ownership in the building. It is further alleged that at the same time said agent of plaintiffs made demand on defendant for the sums of rent due on said lease since plaintiffs acquired the premises, but defendant refused to pay said rents. The prayer was for a judgment against defendant for possession of said premises.

As a preface to our statement of the facts as disclosed by the record in this case we refer to the testimony of Milton Goffstein, agent of the plaintiffs, who testified that when he exhibited the warranty deed to the defendant and served him with the demand for payment of the rents, that defendant just laughed and said, "I don't have to pay you rent. I'll drag you through the courts for two years." The witness said defendant made these statements several times thereafter.

A reading of the record in this case discloses that the defendant, who was his own attorney throughout the proceedings, availed himself of every device known to the procedural law to ward off the inevitable day of judgment. The return of service on the summons in the Magistrate Court showed that defendant was unable to be found at 1803 Park Avenue. Thereafter, plaintiffs obtained an order of publication which notified defendant of the pending civil action. On the date defendant was ordered to appear he did appear in the Magistrate Court and succeeded in obtaining a continuance. Thereafter, he requested a trial by jury, which request was denied. He then filed a motion for a change of venue, alleging that he could not have a fair and impartial trial before the citizens of the City of St. Louis, on account of the bias and prejudice of said citizens. The motion for change of venue was sustained and the cause was assigned to District No. 7 in St. Louis County. After a continuance in that court defendant did not appear on the day the case was set for hearing and the Magistrate entered a finding in favor of plaintiffs for possession of the premises at defendant's costs.

Thereafter, defendant filed a notice of appeal to the Circuit Court of the County of St. Louis. In the Circuit Court there followed many motions filed by defendant, some attacking the jurisdiction of the court to hear the case, some for a continuance and some protesting the setting of the case for jury trial. The record is replete with dilatory pleas and attempts by the defendant to avoid the ultimate trial of this case and all of these efforts seem to be in keeping with the threat he made to the agent of plaintiffs and heretofore stated. Finally, on April 2nd, 1964, defendant was compelled to try his case before a jury.

The evidence herein supports the following statement of facts. On October 1, 1961, and for some time prior thereto Morris Erlich and Rosalee Erlich were the owners of 1801 and 1803 Park Avenue. They also seemed to be the owners of an adjoining building known and numbered

as 1805–07 Park Avenue. A lease was entered into between them and the defendant herein for an upper floor of 1803 Park Avenue calling for a rental of $35 per month payable on the 1st day of each month. The lease was duly recorded and acknowledged in the City of St. Louis, Missouri.

On or about October 1, 1962, a fire and explosion occurred at 1805–07 Park Avenue. The evidence shows that the only damage was to 1805–07 Park Avenue which was a garage located next door to the building and premises occupied by defendant herein. A brick firewall approximately 20 inches in width separated 1803 Park Avenue from 1805–07 Park Avenue. All of plaintiffs' witnesses agreed that the fire was not in the part of the building occupied by defendant and that there was no connection between the two buildings, except the firewall mentioned.

Morris Erlich, one of the owners at the time of the fire, testified that there was no damage to the premises occupied by the defendant and that after the fire he received no type of written communication from the Police Department, the Building Department or the Health Department of the City of St. Louis indicating that the premises were not tenantable. The only notice received by him was to clear the debris left by the fire at 1805–07 Park Avenue. Milton Goffstein, who later became agent of the plaintiffs herein, said he owned a dry goods store at 1801 Park Avenue, which was a part of the building in which Harvey Euge, the defendant, was a tenant. He occupied these premises at the time of the fire and explosion, which occurred on October 1, 1962, and said that the fire did not involve the building in which he and Mr. Euge were tenants. When asked about his knowledge of the fire and the explosion, he said: "I was standing several feet from the wall (firewall) at the time and I didn't even know there was an explosion * * *. No, sir, I did not know there was an explosion until I ran outside when I heard the fire engine."

Frank E. Altman, a witness for the plaintiffs, testified that he was a deputy chief building inspector for the City of St. Louis and that his office had no record of a fire or explosion at 1801–03 Park Avenue and no record of any damage done at that address. He said that some time after October 1, 1962, his office received a complaint about an accumulation of boxes and materials at Mr. Euge's premises that created a fire hazard and upon his attempt to inspect the premises he was denied entrance by the defendant. On subsequent attempts and in the company of a police officer and the chief building inspector the defendant informed all of them that they could not inspect the premises. He further testified that his department had never sent any written notice to the owners of the building to repair the firewall or the interior premises of the building at 1801–03 Park Avenue.

Defendant in his testimony, concerning the fire and explosion, stated that it took place in the garage "adjacent to us," which was attached to the premises he occupied.

Mr. Newell S. Ferry, an alleged arbitrator appointed by the defendant, produced by the defendant as a witness, testified that the firewall looked like it was all intact.

At the time of the fire and explosion on October 1, 1962, the defendant, Euge, owed to the Erlichs, the then owners of the premises approximately six months rent. Shortly after the fire occurred defendant served notice on the Erlichs that he wanted to submit to arbitration the question of the tenantableness of the premises pursuant to the alleged terms of the lease and he contended that he did not have to pay any rent until the arbitration was finally settled. Thereafter, a suit was filed by the Erlichs against the defendant for rent and possession of said premises. The Erlichs later dismissed their prayer for possession and it is our understanding that the suit for rent is still pending.

Defendant, in his testimony, never claimed the premises were not tenantable

after the fire. Morris Erlich testified that he made no repairs to the premises and was not required to make repairs to that part of the building occupied by the defendant.

In a suit filed by the defendant, subsequent to the fire, against the Building Commissioner, Mayor, City Counselor, Chief of Police, all of the City of St. Louis, and other officers of the City of St. Louis, he alleged that the premises he occupied at 1803 Park Avenue was his place of business and residence "and that the structure is sound, safe, and fit for human use, occupancy and habitation and that the said premises are located in a zone permitting mixed occupancy of residential and business structures and has been so used for many years prior to the enactment of any zoning or ordinance in regards thereto."

1801–03 Park Avenue was purchased from the Erlichs on December 10, 1962, and on that date a warranty deed duly executed and acknowledged was delivered to the plaintiffs by the Erlichs. Defendant was in possession of the upper floor of 1803 Park Avenue at the time plaintiffs acquired ownership of the building. Milton Goffstein was appointed agent, in charge of the property, by the plaintiffs herein, and on July 5, 1963, he exhibited to the defendant the warranty deed by which the plaintiffs acquired the property and served on said defendant a demand to become a tenant of the plaintiffs and if he did to pay the monthly rent payable on the 1st day of each month. It was at this time that the defendant told him "I don't have to pay you rent. I'll drag you through the courts for two years."

Defendant in answers to interrogatories propounded by the plaintiffs admitted that there was a display of the warranty deed and said "there was a purported attempt of a demand of some rent * * *." In answer to another interrogatory he admitted no payments of rent had been made. He said that no payments of rent were made due to the "question of arbitration" he had with the prior owners and further said that the "question of the arbitration still pending from their predecessor."

In his testimony defendant admitted that the plaintiffs were the owners of the premises and admitted that the demand for the rent was made on various occasions, particularly on July 5th, 1963. It seemed to be conceded in the record that defendant has never paid any rent to the new owners, the plaintiffs herein.

In his testimony Milton Goffstein said that he had asked the defendant to become a tenant of the plaintiffs and that defendant refused.

Defendant in his brief has listed 75 alleged points under his "Points and Authorities." None of them fully comply with Civil Rule 83.05(a) (e), V.A.M.R. Practically all of them are mere abstract statements of law that do not show how they are related to any action or ruling of the trial court. Others are merely argument or analysis of the authorities. However, an examination of the record in this case discloses that there is one single issue and that is the question of the right of plaintiffs to possession of the premises occupied by the defendant at 1803 Park Avenue, St. Louis, Missouri.

As we pointed out earlier, this suit was brought under the provisions of Section 535.070 RSMo 1959, 37 V.A.M.S., for possession only of the premises. There is no attempt upon the part of plaintiffs to recover any rents due. Section 535.070 relied upon by plaintiffs provides: "If any person purchase lands or tenements occupied at the time of such purchase by any tenant, lessee or sublessee, who shall, at any time thereafter, fail to pay rent to such purchaser, the person purchasing such property shall have the right, upon such failure, to commence proceedings before a magistrate to recover possession, as above provided."

Sections 535.080 and 535.090 must be read in connection with Section 535.070. Section 535.080 reads as follows: "Before such proceedings are commenced, the plaintiff or his

agent shall make a demand of rent, as provided, and, at the time of making this demand, shall exhibit to the tenant or person in possession of the premises the deed under which he claims title, and if payment be then refused, the owner may commence his action as aforesaid."

Section 535.090 reads as follows: "It shall be sufficient for such person to file his complaint, verified by affidavit, stating by whom the premises were leased, and the terms of such lease or renting, and how he claims title to the same; and upon the trial of the cause, if the plaintiff show that the party in possession, or those under whom he claims, rented or leased from a party claiming title to the premises by deed, and that the plaintiff has acquired the title of the original lessor, by deed or deeds, regularly acknowledged, he shall be entitled to recover possession."

■ In the action brought by plaintiffs they do not seek the recovery of rent in addition to the possession of the premises. This is because purchasers of leased premises must allege and prove an attornment to them by the tenant before they may recover rent, in addition to possession.

■ An "attornment" is the act of a person who holds a leasehold interest in land, by which he agrees to become the tenant of a purchaser who has acquired the fee in the land, or the remainder or reversion, or the right to the rent or services by which the tenant holds. It is an act by which a tenant acknowledges his obligation to a new landlord and requires an overt act by the tenant. Black's Law Dictionary, 4th Edition, "Attornment"; 51 C.J.S. Landlord and Tenant § 277, p. 933.

■ If the tenant refuses to pay rent or attorn to the purchasers of the reversion, the purchasers have a remedy under the quoted sections of the statutes, but, as said, under such circumstances may recover possession only. Duke v. Compton, 49 Mo.

App. 304; Barclay et al. v. Wyatt, 223 Mo. App. 1022, 14 S.W.2d 44; Bess v. Griffin, Mo.App., 234 S.W.2d 978.

■ The record evidence in this case shows that defendant leased the upper floor of 1803 Park Avenue from the Erlichs and was in possession of said premises at the time plaintiffs acquired the title of the original lessor, by deed regularly acknowledged. The record evidence further shows that the plaintiffs through their agent made a demand of rent and at the time of making the demand exhibited to the defendant, who was then in possession of the premises, the deed under which they claimed title and that the defendant then refused to pay the rent. The record shows that defendant has admitted that the plaintiffs were the purchasers of the fee and were the owners of the premises at the time the demand of payment was made July 5, 1963, and that plaintiffs, through their agent, had exhibited their warranty deed showing their ownership and title to the premises occupied by the defendant. The record further shows that the defendant refused to pay the rent when demanded and refused to become a tenant of the plaintiffs. He thereby refused to attorn to the plaintiffs as the purchasers of the reversion and as stated in the authorities cited, the plaintiffs under such circumstances may recover the possession of the premises occupied by the defendant. Duke v. Compton, supra; Barclay v. Wyatt, supra.

■ Defendant, as a defense, has attempted to assert the provisions of the lease which require arbitration under certain circumstances. It appears that defendant in his attempt to assert this defense has failed to understand that this is not a suit to recover rent on a lease pursuant to the provisions of §§ 535.020, 535.030 and 535.040 RSMo 1959, 37 V.A.M.S. These sections of the statutes permit a landlord to recover possession of premises and in addition thereto to also recover his debt for the amount of rent then due. The instant action is not

one based on the contractual relationship of landlord and tenant. In asserting this defense defendant attempts to hold the plaintiffs to the terms of the lease. This he cannot do because he has not accepted the plaintiffs as his landlord and has refused to pay them rent.

It would be an anomaly in the law to permit defendant to assume on the one hand that no contractual relationship existed and yet hold plaintiffs to the terms of a lease, the basis of defendant's defense. Barclay v. Wyatt, supra, 1. c. 14 S.W.2d p. 45. Despite the apparent inadmissibility of this defense, the evidence concerning it was before the jury and the jury verdict indicates that the jury did not consider the defense meritorious. The attempt to assert the requirement of arbitration against these plaintiffs in their action for possession of the premises was a mere subterfuge on the part of the defendant. The record in this case shows that defendant at no time contended the premises were not tenantable. He continued to live in the said premises and in a suit, filed subsequent to the fire, he contended that the premises were in sound and habitable condition. In this respect defendant was trying to talk out of both sides of his mouth, contending in this action for arbitration, whereas, in another action, he admitted that the property was tenantable, sound and in good condition. The question of arbitration would only be an issue if defendant had attorned to plaintiffs as the new owners by paying them rent, providing, of course, that he could show that the premises were not tenantable or he was entitled to some rebate on the rent.

Despite the fact that defendant's points relied on in this case do not comply with the Civil Rules, as indicated, we have carefully examined the record in this case and find no errors affecting the substantial rights of the defendant even though not raised in the trial court are preserved properly for review in this court. We find that the trial court properly instructed the jury. The pleadings and the evidence in this case show that plaintiffs are entitled to a judgment for possession only. Therefore, the judgment of the trial court should be affirmed. It is so ordered.

ANDERSON, J., and FRANK D. CONNETT, Jr., Special Judge, concur.